UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:09-cv-75-RJC

| | |
|---|---|
| LARRY ROGER AYSCUE, JR., )<br>      Petitioner, )<br>)<br>v. )<br>)<br>GRADY J. HAYNES, Admin., )<br>Warren Corr. Inst., )<br>      Respondent. )<br>)| **ORDER** |

**THIS MATTER** comes before the Court on Respondent's motion for summary judgment (Doc. No. 5).

## I.   BACKGROUND

Petitioner is a prisoner of the State of North Carolina, who, on October 18, 2006, in Alexander County Superior Court, the Honorable Mark E. Klass presiding, was convicted after trial by jury of failing to register as a sex offender. The jury also determined that Petitioner had achieved the status of habitual felon. Petitioner was sentenced to 140-77 months' imprisonment, in case 05 CRS 51338. On December 4, 2007, the North Carolina Court of Appeals issued an unpublished opinion finding no error and on March 6, 2008, the North Carolina Supreme Court dismissed Petitioner's petition for discretionary review. (Doc. Nos. 6-1, 6-2). Petitioner was represented at trial by Edward L. Hedrick IV and on appeal by Anne Bleyman.

Petitioner dated a pro se motion for appropriate relief (MAR) December 15, 2008, and filed it in Alexander County Superior Court. (Doc. No. 6-9). The MAR court entered a summary denial on March 6, 2009. (Doc. No. 6-10). Petitioner filed a pro se certiorari petition in the North Carolina Court of Appeals on April 9, 2009. (Doc. No. 6-11). The state filed its response on April 21, 2009. (Doc. No. 6-12). The North Carolina Court of Appeals denied

certiorari on April 23, 2009. (Doc. No. 6-13). Petitioner filed his pro se federal habeas application form in this Court on June 29, 2009. (Doc. No. 1).

Petitioner was convicted under the North Carolina Sex Offender & Public Protection Registry (hereinafter "the sex offender registry law"), which applies to all offenders convicted on or after January 1, 1996, and to all prior offenders released from prison on or after that date. The Registry requires individuals who have committed an offense against a minor or a sexually violent offense to register as sex offenders. N.C. GEN. STAT. §§ 14-208.6(4); 14-208.7(a) (2005). The sex offender registry law states that "[i]f a person required to register [as a sex offender] changes address, the person shall provide written notice of the new address not later than the tenth day after the change to the sheriff of the county with whom the person had last registered." N.C. GEN. STAT. § 14-208.9(a) (2005). The law further states that failing to notify the last registering sheriff of a change of address is a Class F felony. Id. § 14-208.11(a)(2). To convict a defendant of failure to register as a sex offender, the State must prove that: "'1) the defendant is a sex offender who is required to register; and 2) that defendant failed to notify the last registering sheriff of a change of address.'" State v. Harrison, 165 N.C. App. 332, 334 (2004) (quoting State v. Holmes, 149 N.C. App. 572, 577 (2002)).

As noted, Petitioner was convicted for failing to register as a sex offender under the sex offender registry law. At trial and on appeal, Petitioner did not dispute that he was residing in Iredell County in 2005. Petitioner was convicted based on a finding at trial that he had moved to Alexander County around May 2005 and that he had failed to notify the Sheriff of Iredell County that he had moved. See State v. Ayscue, No. COA07-345, 2007 WL 4233678, at *2 (N.C. Ct. App. Dec. 4, 2007). The North Carolina Court of Appeals noted the following evidence that showed that Petitioner had moved from Iredell County to Alexander County around May 2005:

Bowman, an Alexander County resident, testified that Defendant moved in with her one month prior to 24 June 2005:

Q: ... [D]id anybody else move into your trailer?

A: [Defendant] did....

Q: ... Do you know where [Defendant] was living before he moved into the trailer with you[?] ...

A: He was living with his uncle[.] ...

Q: Okay. And how long before June the 24 of 2005 was it that [Defendant] moved into your trailer?

A: ... [A]bout a month

Furthermore, Deputy Timothy Simms (Simms) of the Alexander County Sheriff's Office testified that Defendant told Simms he lived in the trailer:

Q: [D]id [Defendant] ask you any questions before you left to come to the Alexander County Sheriff's Office?

A: Yes, sir, he asked me if I was taking him to jail.

Q: All right. What was your response when he asked if you were taking him to jail?

A: I told him that I was not. I was only there to try to figure out what had happened.

Q: All right. And after you told him that, what, if anything, did [Defendant] say about who all lived at the residence[?] ...

A: He stated that he had lived at the residence with Lisa Bowman.

Susan Sakrit (Sakrit), Office Deputy, Iredell County Sheriff's Office testified that she was "in charge of maintaining all sex offender registry [,]" and that "[e]ach time the offender changes an address, they're required to come in, fill out the current address they're registered at and the address that they're going to." Sakrit further testified:

Q: ... Prior to today, have you had an opportunity to review the complete file as to [Defendant] with the Iredell County Sex Offender Registry?

> A: Yes.
>
> Q: And between the dates of May the 12th of 2005 and September the 20th of 2005, was there any change of address form completed by [Defendant] with the Iredell County Sheriff's Office to reflect an address in Alexander County?
>
> A: No, there was not.
>
> Q: And is there any record whatsoever in the file that ... [Defendant] ever notified the Iredell County Sheriff's Office that he established a residence in Alexander County?
>
> A: No.

State v. Ayscue, 2007 WL 4233678, at *6. Based on the above evidence, the North Carolina Court of Appeals "conclude[d] that the foregoing evidence was sufficient to submit the case to the jury on the question of whether Defendant failed to notify the last registering sheriff of a change of address." Id.

In his federal habeas petition, Petitioner has asserted eight grounds for relief: (1) the trial court committed reversible error by instructing the jury on a non-crime; (2) the evidence introduced at trial was insufficient to show he was required to register as a sex offender; (3) the indictment was fatally defective because it charged a non-existent crime; (4) his conviction resulted from trial counsel's ineffectiveness; (5) the State withheld exculpatory evidence in violation of Brady and Giglio; (6) the trial court miscalculated his prior conviction level to his prejudice; (7) the entry of judgment to the habitual felon status was an error in law; and (8) his 140-77 month sentence violates the Eighth Amendment.

## II. STANDARD OF REVIEW

A. Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to

any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

B. Section 2254 Standard

In addition to the summary judgment standard set forth above, for those claims raised by Petitioner that were adjudicated on their merits by the state courts, this Court's review is limited by the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, as construed by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000). This Court may not grant relief unless the state court's merits review of a claim alleging constitutional error "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law if the court "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision is an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to

5

the facts of the prisoner's case." Id. A state court decision also may be an unreasonable application of clearly established federal law if it applies Supreme Court precedent "in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable [or] fails to apply the principle of a precedent in a context where such failure is unreasonable." Robinson v. Polk, 438 F.3d 350, 355 (4th Cir. 2006) (citation omitted).

The Supreme Court has cautioned that an unreasonable application of federal law differs from an incorrect application of federal law. See Williams, 529 U.S. at 410. Thus, "[u]nder 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In deciding whether a state court's application of clearly established federal law is unreasonable within the meaning of § 2254(d), a federal habeas court should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Finally, the state court's factual findings are presumed to be correct, and this presumption may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. ANALYSIS

### 1. First Ground For Relief: The trial court committed reversible error by instructing the jury on a non-crime.

Petitioner first contends that the trial court committed reversible error by instructing the jury on a non-crime. In support of this contention, Petitioner contends that "[t]he trial court's

6

instructions to the jury on failing to register as a sex offender was done in a way that mislead [sic] the jury, and because the charge in the warrant and indictment failed to properly charge the offense, the instructions were given on a non-existent crime." (Doc. No. 1 at 6.) Here, Petitioner is challenging the following instruction given to the jury:

> The Defendant has been charged with failing to comply with the sex offender registration law. For you to find the Defendant guilty of this offense, the State must prove three things beyond a reasonable doubt.... If you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant was a resident or had established a residence in this state, that he had previously been convicted of a reportable offense for which he must register, and that *he failed to register with the Sheriff's Office in the county of his residence within 10 days of his arrival in the county* and changed his address and failed to provide written notice of his new address no later than 10 days after the change to the Sheriff's Office in the county with whom he was last registered, it would be your duty to return a verdict of guilty.

State v. Ayscue, 2007 WL 4233678, at *7 (emphasis added). As Petitioner notes, the instruction did not accurately state the sex offender registration law, as the law only requires a sex offender to register with the Sheriff of the county where he was last registered, not in the county where he moved. In other words, contrary to the jury instruction, Petitioner was not required to register with the Alexander County Sheriff's office–he was only required to register with the Iredell County Sheriff's office. Petitioner contends that he was denied a fair trial based on the error in the jury instruction. Petitioner raised this claim on direct appeal. Because Petitioner did not raise an objection to the instruction at trial, the North Carolina Court of Appeals reviewed for plain error and denied the claim, stating, in relevant part:

> [W]e are not convinced that absent the erroneous instruction, a jury would not have found Defendant guilty of failure to register as a sex offender in violation of G.S. § 14-208.11. The court's instructions to the jury did not "'den[y] the defendant a fair trial'" or "'tilt[ ] the scales against him[.]'" Shipp, 155 N.C. App. at 300, 573 S.E.2d at 724 (quoting Lancaster, 137 N.C. App. at 46, 527 S.E.2d at 68). To the contrary, the instructions enured to Defendant's benefit, requiring the jury to find beyond a reasonable doubt that Defendant failed to

7

> register in both Alexander County and Iredell County, when all that was required
> by G.S. § 14-208.11 was a finding of Defendant's failure to register in Iredell
> County. We conclude that the court's jury instruction regarding Defendant's
> failure to notify the Sheriff's office in both Iredell County and Alexander County
> of his change of address did not amount to plain error. This assignment of error is
> overruled.

State v. Ayscue, 2007 WL 4233678, at *8.

This Court first notes that the state court's plain error review constitutes an enforcement of the procedural bar, precluding federal habeas review, and Petitioner has not shown cause to overcome the procedural default. See Daniels v. Lee, 316 F.3d 477, 487-88 (4th Cir. 2003) (stating that the availability of plain error review in the state appellate court of a claim that was not raised at trial does not eliminate the procedural default for purposes of habeas review). In any event, even if this claim were not procedurally defaulted, it is without merit. Federal habeas corpus relief is not available for state law errors with regard to jury instructions, unless "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). Here, as the state appellate court determined, the erroneous jury instruction actually benefitted Petitioner because the jury was required to find *only* that Petitioner registered with the Iredell County Sheriff's office, whereas the jury instruction stated that the jury was required to find that he had *also* failed to register in Alexander County. In sum, the state court's adjudication of Petitioner's claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In sum, Petitioner's first contention is procedurally barred and, in any event, is without merit.

8

**2. Second Ground For Relief: The evidence introduced at trial was insufficient to show Petitioner was required to register as a sex offender.**

Petitioner next contends that the evidence introduced at trial was insufficient to show he was required to register as a sex offender. As noted, the North Carolina Sex Offender & Public Protection Registry applies to all offenders convicted on or after January 1, 1996, and to all prior offenders released from prison on or after that date. Although the petition is not clear, Petitioner is presumably contending that the sex offender statute does not apply to him because there was insufficient evidence that he was released from prison for a reportable offense on or after January 1, 1996." On direct appeal, Petitioner specifically argued that although the Division of Criminal Information (DCI) printout showed a parole date of 10 December 1996, the printout did not prove that Defendant was released after January 1, 1996 for a "[r]eportable conviction." See N.C. GEN. STAT. § 14-208.6(4) (2005). Petitioner argued that there was a possibility that he could have been paroled before January 1, 1996, if not for the imposition of a subsequent two-year term for an earlier conviction on July 25, 1995, for assault inflicting serious injury. In denying this claim on appeal, the North Carolina Court of Appeals stated:

> Here, even though the possibility exists that Defendant could have been paroled prior to 1 January 1996 but for the 25 July 1995 assault inflicting serious injury conviction, we nonetheless conclude that, considering the evidence in the light most favorable to the State and giving the State the benefit of every reasonable inference, the evidence presented by the State on the first element-that defendant was a sex offender who was required to register-was sufficient for the case to go to the jury.

State v. Ayscue, 2007 WL 4233678, at *8. This Court finds that the state court's decision was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. On federal habeas review, for a claim of insufficient evidence, the

9

standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. See Wright v. West, 505 U.S. 277 (1992); Jackson v. Virginia, 443 U.S. 307 (1979). Furthermore, any claim of insufficient evidence is necessarily a federal due process claim. See Jackson v. Virginia, 443 U.S. at 321; In re Winship, 397 U.S. 358, 364 (1970). Here, the evidence was clearly sufficient at trial to show that Petitioner (1) had been convicted of being a sex offender in North Carolina and (2) that he was released from prison for a reportable offense on or after January 1, 1996. Based on this evidence, the trial court correctly concluded that Petitioner was required to register as a sex offender. Thus, Petitioner's Second Ground for relief is without merit and will be dismissed.

### 3. Third Ground For Relief: The indictment was fatally defective because it charged a non-existent crime.

Petitioner next contends that the indictment was fatally defective because it charged a non-existent crime. Here, as with the jury instruction, the indictment incorrectly stated that Petitioner was required to register with the Sheriff's office in the county he had moved to, as opposed to the county where he was last registered. That is, the indictment stated:

> [T]he defendant named above unlawfully, willfully and feloniously did as a person required by Article 27A of Chapter 14 of the General Statutes to register as a sexual offender, knowingly and with the intent to violate the provisions of that Article fail to notify the last registering Sheriff of a change of address. The defendant had been previously registered in Iredell County, North Carolina and had moved to Alexander County without notifying neither the Iredell County Sheriff *nor the Alexander County Sheriff*, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

State v. Ayscue, 2007 WL 4233678, at *6 (emphasis added). Petitioner raised the substance of his third current contention on direct appeal, and the North Carolina Court of Appeals

10

adjudicated and denied this contention on its merits, stating:

> Defendant contends that because the indictment contained language regarding Defendant's failure to register as a sex offender in Iredell and Alexander Counties the indictment was "fatally defective" and the defect rendered the trial court without subject matter jurisdiction to enter judgment against Defendant. We find this argument unconvincing.
>
> "When an averment in an indictment is not necessary in charging the offense, it will be deemed to be surplusage[.]" Pickens, 346 N.C. at 646, 488 S.E.2d at 172 (internal quotation marks omitted); see also State v. Kornegay, 313 N.C. 1, 31, 326 S.E.2d 881, 902 (1985). Here, it was necessary that the indictment charge the essential element of the offense that Defendant failed to register as a sex offender in Iredell County. The charge that Defendant also failed to register in Alexander County was mere surplusage.
>
> Because the essential element of the offense at issue was whether Defendant "provide[d] written notice of the new [Alexander County] address not later than the tenth day after the change to the sheriff of [Iredell County][,]" N.C. Gen. Stat. § 14-208.9(a)(2005), and because this element was charged in the indictment, the surplus language in the indictment neither rendered the indictment facially defective, nor deprived the court of subject matter jurisdiction. This assignment of error is overruled.

State v. Ayscue, 2007 WL 4233678, at *7.

This Court finds that the state court adjudication was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was the state court adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Alleged errors or deficiencies in state court indictments do not warrant federal habeas relief unless they rendered the entire state court proceeding fundamentally unfair. See Asheford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985). Furthermore, alleged errors or deficiencies in state court indictments are non-jurisdictional as a matter of federal constitutional law, and are therefore subject to harmless error analysis. See United States v. Cotton, 535 U.S. 625, 631 (2002); Schlaepfer v. Harkleroad, 244 F. Supp. 2d 589, 593 (W.D.N.C. 2003). Here, as the state court observed with regard to the jury instruction,

11

Petitioner actually benefitted from the indictment because, according to the indictment, it was necessary to find that Petitioner failed to register in *both* Iredell and Alexander counties, where in fact the sex offender registry law required only a finding that Petitioner failed to register in Iredell County. In sum, for these reasons, Petitioner's third contention is without merit.

    **4.    Fourth Ground for Relief: Petitioner's conviction resulted from trial counsel's ineffectiveness**.

Petitioner next contends that his trial counsel was ineffective. To support this contention, Petitioner asserts that trial counsel failed to investigate any information Petitioner gave to him, failed to properly advise him of the chances of conviction if he refused the plea offer, and erroneously accepted the prior record level point calculation of the prosecutor instead of conducting his own calculation to Petitioner's prejudice.

In <u>Strickland v. Washington</u>, the Supreme Court set forth the test for determining whether a defendant received ineffective assistance of counsel as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984). Thus, under <u>Strickland v. Washington</u>, a defendant must show both that counsel's performance fell below objective standards of reasonableness, and that, but for this conduct, there was a reasonable probability that the result of the trial would have been different. <u>Id.</u>

In determining reasonableness, a reviewing court must consider whether the performance was reasonable in light of the totality of the circumstances when the performance was rendered.

12

Strickland, 466 U.S. at 690.  Furthermore, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotations omitted).

Finally, a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice allegedly suffered as a result of the alleged deficiencies of counsel, and if it is easier to dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice, the reviewing court should analyze the claim under the prejudice prong only. Id. at 697.

Here, all of Petitioner's contentions regarding counsel's ineffectiveness are bare, unsupported allegations that should be summarily denied as conclusory. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992).  Petitioner raised the substance of his current contention in his MAR, and the MAR court summarily denied this claim on its merits.[1]  (Doc. No. 6-10).  The MAR court's adjudication of Petitioner's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Petitioner has simply failed to show that counsel was ineffective.  First, with regard to Petitioner's contention that counsel failed to investigate any information Petitioner gave to him, the contention is simply too vague and conclusory to give rise to an ineffective assistance claim.

---

[1] The summary denial by the MAR court constitutes a denial on the merits and is therefore entitled to deferential review under section 2254(d) and (e).  Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998).

13

Next, with regard to Petitioner's contention that counsel failed to advise him of the chances of conviction if he refused the plea offer, this contention is without merit. Petitioner was no doubt aware that he had at least a minimal chance of conviction if he refused the plea offer and proceeded to trial. Petitioner appears to be suggesting that counsel should have warned him that the jury was likely to convict Petitioner if he did not accept the plea. Petitioner has not produced any evidence to show that counsel *did not* advise Petitioner of this likelihood. In any event, counsel was certainly not required to estimate the chances of conviction by a jury if Petitioner went to trial. Inherent in every criminal case is the possibility that a defendant may be convicted by a jury if he does not accept a plea offer. Petitioner's contention that counsel was ineffective for failing to advise Petitioner of his chances of being convicted if he refused the plea offer is without merit. Finally, Petitioner's contention that counsel accepted the prior record level point calculation of the prosecutor instead of conducting his own calculation to Petitioner's prejudice is without merit. Petitioner does not articulate how the prosecutor's prior record level point calculation for Petitioner's criminal record was incorrect. Therefore, Petitioner has failed to show that counsel was ineffective, and this claim must be dismissed.

    **5.**     **Fifth Ground for Relief: The State withheld exculpatory evidence in violation of <u>Brady</u> and <u>Giglio</u>.**

Petitioner next contends that the State withheld exculpatory evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 86–88 (1963) (requiring disclosure of exculpatory evidence), and <u>Giglio v. United States</u>, 405 U.S. 150, 153–55 (1972) (requiring disclosure of evidence affecting the credibility of government witnesses). To support this contention, Petitioner asserts that the prosecution withheld a statement his probation officer allegedly made to Petitioner. Petitioner claims that it shows that he was only visiting the residence in Alexander County with

14

Case 5:09-cv-00075-RJC   Document 13   Filed 01/31/12   Page 14 of 19

the consent of his probation officer,[2] and the State could not prove that he had established permanent residence there. Petitioner raised the substance of his current contention in his MAR, and the MAR court summarily denied this MAR on its merits.

Under clearly established Supreme Court law, to establish a Brady or Giglio violation, Petitioner must show that the prosecution suppressed or otherwise failed to turn over to the defense evidence that was favorable to the defense that was material to either guilt or sentencing. See Atkins v. Polk, Civil No. 1:06cv372, 2011 WL 3608234, at *26 (W.D.N.C. Aug. 16, 2011). There is no Brady or Giglio violation when the defense had access to the information from other sources. See Basden v. Lee, 290 F.3d 602, 613 (4th Cir. 2002).

Here, Petitioner has failed to show that the State withheld any information in violation of Brady or Giglio, because Petitioner himself obviously was the very source of the information that he contends the State withheld–that is, what his own probation officer purportedly told him, and his contention that he never moved into the Bowman residence. Thus, Brady and Giglio simply do not apply, and the MAR court's summary denial of Petitioner's claim was therefore neither contrary to nor an unreasonable application of clearly established Supreme Court law,

---

[2] Petitioner has presented no admissible evidence of such a statement by his probation officer. In any event, regardless of what his probation officer told him, Petitioner was aware of and on notice of his status as a sex offender and the duty to register with the Iredell County Sheriff if he moved to another county. Furthermore, the state appellate court found that, based on Petitioner's own statements as well as statements by Bowman, that there was sufficient evidence from which a jury could conclude that Petitioner had in fact moved to Alexander County, as least temporarily. As the North Carolina Court of Appeals explained in its opinion, on June 24, 2005, Keith Warren, Chief Detective with the Alexander County Sheriff's Office, investigated a fire at Lisa Bowman's residence in Alexander County. Warren spoke to Petitioner while at Bowman's residence. State v. Ayscue, 2007 WL 4233678, at *2. During Warren's interview with Petitioner regarding the fire, Petitioner told Warren that he had been staying at Bowman's residence for a couple of weeks. Id. Petitioner also told Warren that Bowman's residence was Petitioner's current residence. Id.

15

nor was it an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. In sum, Petitioner has simply failed to show that the State failed to disclose any exculpatory evidence in violation of Brady or Giglio. Petitioner's fifth contention is without merit and will be dismissed

> **6.     Sixth Ground for Relief: The trial court miscalculated Petitioner's prior conviction level to his prejudice**.

Petitioner next contends that the trial court miscalculated his prior conviction level to his prejudice. To support this contention, Petitioner asserts that prior misdemeanor convictions were used to add to his prior record level points that were not allowed by law or that were obtained in violation of his right to counsel, or the same prior convictions were used to establish the habitual felon status as were used to add to his prior record level points. Petitioner raised the substance of his contention in his MAR, and the MAR court summarily denied the claim on its merits. The MAR court's summary denial of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Here, Petitioner does not identify the misdemeanor convictions he believes were improperly used. Furthermore, his prior record level worksheet shows that ten prior misdemeanor convictions were properly used in determining his prior record level. (See Copy of prior record level worksheet, Doc. No. 6-3 at 124-25); see also N.C. GEN. STAT. § 15A-1340.14(b)(5) (2007) (1 point for each qualifying prior misdemeanor conviction). Furthermore, the second page of the prior record level worksheet shows that the three prior felonies used in the habitual felon indictment were not double counted in order to obtain Petitioner's prior record level. That is, the three prior felonies are separately listed at the bottom of the second page of the worksheet and were not counted in the prior record level calculation on the first page of the worksheet. (See Doc. No. 6-3 at 8-9, 124-25). In sum,

contrary to Petitioner's conclusory assertion, there was no double counting, and Petitioner's Contention Six is therefore without merit.

7. **Seventh Ground For Relief: The entry of judgment to the habitual felon status was an error in law.**

Petitioner next contends that the entry of judgment to the habitual felon status was an error in law. To support this contention, Petitioner asserts that the trial judge imposed judgment solely on the habitual felon status instead of the enhanced predicate felony of failing to register as a sex offender. Petitioner's contention is without merit, as his judgment and commitment form clearly lists only one felony conviction of failing to register as a sex offender on June 24, 2005. On the same form, the block is checked indicating that Petitioner was also adjudged to be a habitual felon. (Doc. No. 6-3 at 126-27). Thus, Petitioner's judgment and commitment form clearly shows that the trial court imposed its judgment on the predicate felony of failing to register as a sex offender.

Furthermore, Petitioner raised the substance of this contention in his MAR, and the MAR court summarily denied the claim on its merits. Here, the MAR court's summary denial of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. In sum, Petitioner's seventh contention is without merit.

8. **Eighth Ground For Relief: Petitioner's 140-77 month sentence violates the Eighth Amendment.**

Petitioner next contends that a 140-77 month sentence for failing to register as a sex offender shocks the conscience and violates the Eighth Amendment because the punishment is grossly disproportionate to the crime of failing to register as a sex offender. Petitioner raised the substance of his current contention in his MAR, and the MAR court summarily denied the claim

on the merits. The MAR court's summary denial of Petitioner's claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. This Court first notes that Petitioner's 140-77 month sentence was not based solely his last predicate offense of failing to register as a sex offender. Rather, his sentence was also properly based on recidivism, as he had already been adjudged to be a habitual felon. The Supreme Court has previously held that the Eighth Amendment was not violated in cases involving even longer sentences imposed based on recidivist statutes similar to North Carolina's habitual felon law. See, e.g., Ewing v. California, 538 U.S. 11 (2003) (upholding a sentence of 25 years to life for theft of golf clubs under California's "three strikes" law); Lockyer v. Andrade, 538 U.S. 63 (2003) (upholding two consecutive terms of 25 years to life for two counts of petty theft under California's "three strikes" law upheld). In sum, the MAR court's summary denial of Petitioner's claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Thus, Petitioner's eighth contention is without merit.

## IV. CONCLUSION

For the reasons stated herein, Respondent is entitled to summary judgment as to all of Petitioner's claims.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment (Doc. No. 5) is **GRANTED**;

2. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right); and

3. Petitioner's Petitioner for Writ of Habeas Corpus, (Doc. No. 1), is **DISMISSED**.

Signed: January 31, 2012

Robert J. Conrad, Jr.
Chief United States District Judge